UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60602-CIV-MARRA/SELTZER

RICHARD LANE and FAITH LANE,

    Plaintiff,

v.

CAPITAL ACQUISITIONS AND
MANAGEMENT COMPANY, a business entity,
XYZ VENTURE PARTNERS, L.L.C., a
Florida limited liability company, ERIC WOLDOFF,
an individual, GEORGE OTHON, an individual,
and REESE WAUGH, an individual,

    Defendants.
_____/



## PLAINTIFFS' RESPONSE TO DEFENDANTS' OTHON, WOLDOFF, WAUGH, AND XYZ VENTURE PARTNERS, L.L.C., MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiffs, Richard and Faith Lane ("Lane"), through their undersigned attorneys, file this Response to Defendants' Othon, Woldoff, Waugh, And XYZ Venture Partners, L.L.C., Motion to Dismiss Plaintiff's First Amended Complaint, and state:

### BACKGROUND

This is an overtime and retaliation case under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., 42 U.S.C. § 1981, and *Florida Statutes* § 448.101 et seq. The Lanes were required to work without proper payment for their overtime, they were subject to race discrimination with respect to their pay and assignment of accounts, and after they complained about the Defendant's race discrimination, the Defendant fired them.

Some procedural history is relevant to the Defendants' Motion. Initially, Lane originally sued Defendant CAMCO in early May, 2004. CAMCO eventually ran in to financial trouble,



and was shut down by the Federal Trade Commission for engaging in violations of the Fair Debt Collection Practices Act, and placed into a receivership by a court in Illinois. It became clear that Lane might not be able to recover all (or any) monies owed, and therefore, because the individual Defendants were the individual owners of CAMCO (and CAMCO's parent XYZ), and were involved in the day-to-day operation of CAMCO (including the decision not to pay overtime), Lane moved to join them as parties. While the individual Defendants and XYZ vigorously opposed the motion, and claimed that there was no personal jurisdiction over them in Florida, the Lanes argued in their Reply Brief that *in personam* jurisdiction existed over those parties. (*Plaintiffs' Reply Memorandum in Support of Plaintiff's Motion to Add XYZ, Waugh, Woldoff, and Othon* at 5-6). The Court granted Lane's Motion.

There are several important facts of which the Court should be aware. First, Lane does not bring a cause of action against the individual Defendants pursuant to 42 U.S.C. § 1981, but rather only brings claims against them pursuant to the Fair Labor Standards Act. Undersigned counsel clearly conveyed this to opposing counsel, and the First Amended Complaint in ¶ 9 sets forth that the individuals are being sued only under the FLSA. Second, the Defendants are conceding that Eric Woldoff is subject to personal jurisdiction. Therefore, the only issues before the Court are whether Waugh and Othon can be held liable for overtime and whether XYZ is liable for all of the claims. Finally, while the Defendants' Motion refers to affidavits submitted by Othon and Waugh, undersigned counsel has not received any such affidavits.

## MEMORANDUM OF LAW

### I. THE LEGAL STANDARDS FOR GRANTING A MOTION TO DISMISS

Only a generalized statement of facts needs to be set out to comply with the liberal Federal Rules of Civil Procedure as to notice pleading. Fed. R. Civ. P. 8(a) (stating that a pleading need

only contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). A classic formulation of the test often applied to determine the sufficiency of a complaint was set out by the Supreme Court of the United States in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), wherein the Court stated:

> In appraising the sufficiency of the Complaint we follow . . . the accepted rule that a Complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

Furthermore, a complaint may not be dismissed because the plaintiff's claim does not support the legal theory he relies on, since the Court must determine if the allegations provide relief on any possible theory. *Robertson v. Johnston*, 376 F.2d 43 (5th Cir. 1967).[1]

In reviewing a motion to dismiss, a court is required to view the complaint in the light most favorable to the plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must accept all well-pleaded allegations as true. *Gonzalez v. McNary*, 980 F.2d 1418, 1419 (11th Cir. 1993). Additionally, and perhaps most importantly, "all reasonable inferences drawn from those facts are taken as true." *Oladeinde v. City of Birmingham*, 963 F.2d 1481, 1485 (11th Cir. 1992) (citing *Stephens v. Department of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990)).

## II.  LANE PROPERLY ALLEGED IN PERSONAL JURISDICTION OVER WAUGH AND OTHON

The relevant portions of the First Amended Complaint set forth how the Court has personal jurisdiction over the proposed defendants, as follows:

> 9.  Defendants George Othon and Reese Waugh are individuals who conducted substantial and continuous business in the Southern District of Florida, and are subject to the laws of the United States and of the State of Florida. Othon and Waugh are owners of both XYZ and CAMCO, and had knowledge that both of these entities were not properly paying collectors for overtime that they were

---

[1] All Fifth Circuit decisions decided before the close of business on September 30, 1981, are binding authority on the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

due, but did nothing to rectify the situation. Therefore, Othon and Waugh are nonresident defendants which were engaged in business activities in the State of Florida, and the Lanes' cause of action arises out of such activities. Because of these ties to the State of Florida, Waugh and Othon had sufficient minimum business contacts with the State of Florida for the long-arm statute to apply in order to secure *in personam* jurisdiction over them. *The individual Defendants ran the day-to-day operations of the business, and knew that the Lanes (and other collectors) were not being paid the overtime that they were due, and knew that collectors were entitled to overtime*, because the State of Illinois's Department of Labor investigated the Defendant for the failure to pay overtime to collectors, and required that the Defendant compensate those collectors for their back pay.

(*Proposed First Amended Complaint* ¶ 9) (emphasis added). The italicized portions of the First Amended Complaint clearly sets forth how personal jurisdiction over Waugh and Othon exists. The Florida statute that the Defendants claim is applicable, *Florida Statutes* § 48.193, specifically states that individuals "who personally or through an agent" is subject to personal jurisdiction if they "[c]omit[ ] a tortuous act within this state" or who "[o]perat[e], conduct[ ], engage[e] in, or carry[ ] on a business or business venture in this state or hav[e] an office or agency in this state" or subject to personal jurisdiction. (*Defendants' Motion* at 5) (citing *Florida Statutes* § 48.193(1)(a-b)). The First Amended Complaint clearly allege that Waugh and Othon committed a tortuous act in the state, because it alleges that they knowingly allowed their employees not to be paid overtime. (*First Amended Complaint* ¶ 9). Thus, Waugh and Othon are subject to personal jurisdiction under *Florida Statutes* § 48.193(1)(b).

The Court should note that CAMCO is owned by XYZ and that XYZ is owned by Woldoff, Waugh, and Othon. A search of the public records reveals that CAMCO's officers and directors are Woldoff, Waugh, and Othon. Moreover, during all relevant times, CAMCO, Waugh and Othon's company, had an office in the Southern District Court of Florida (*First Amended Complaint* ¶ 21), and it is alleged that they ran the day-to-day operations of that office. *Id.* ¶ 9. Thus, Waugh and Othon are subject to personal jurisdiction under *Florida Statutes* §

4

48.193(1)(a). If the Court does not believe that these allegations are enough to establish minimum contacts, Lane requests leave to amend, because there are many other more detailed allegations that can be asserted concerning the day-to-day operational control and decisions with respect to overtime made by Othon and Waugh.

### III. THE COURT HAS PERSONAL JURISDICTION OVER XYZ VENTURE PARTNERS, L.L.C.

Concerning the § 1981 claims, the recent case from the Supreme Court, *Swierkiewicz v. Sorema, N.A.*, 122 S. Ct. 992 (2002), holds that a plaintiff in an employment discrimination case need only essentially plead that he or she was subjected to discrimination by the defendant to withstand a motion to dismiss. Therefore, XYZ is certainly potentially liable for the discrimination claims. Additionally, as alleged in the First Amended Complaint, XYZ is a Florida limited liability company doing business in the Southern District of Florida. (*First Amended Complaint* ¶ 7).

The Eleventh Circuit has held that with respect to a parent and subsidiary, the focus is whether *the parent has a "sufficient connection" with the subsidiary to fairly hold the parent liable. Jackam v. Hospital Corp. of Am.*, 800 F.2d 1577, 1580, 1581 (11th Cir. 1986). The Eleventh Circuit has also held that a determining factor is whether the entity sought to be held liable received the ultimate benefit of the labor without having to pay FLSA wages and overtime. *Villareal v. Woodham*, 113 F.3d 202, 206 (11th Cir. 1997). In this case, clearly, XYZ, as the corporate parent of the Defendant was receiving the ultimate benefit of the toil performed by Lane.

Moreover, XYZ has a "sufficient connection" with CAMCO for XYZ to be liable here. There is significant interrelation of operations, and there is clearly common ownership and financial control, as set forth above. There is common management, as set forth above, because

5

the same executives are employed by both the parent and subsidiary entities. There is also centralized control of labor relations, as the individual owners of the Defendant made a decision not to pay overtime, and has standardized its other employment policies. There is no reason why the Defendant should not be held liable under this theory (both under § 1981 and the FLSA).

As with Title VII, under the FLSA, there are also numerous cases which hold parent corporations liable (with subsidiaries) for the decision not to pay overtime. *See, e.g., Brennan J.M. Fields, Inc.*, 488 F.2d 443 (5th Cir. 1973); *Reich v. Priba Corp.*, 890 F. Supp. 586 (N.D. Tex. 1995). There is also a regulation promulgated by the Department of Labor concerning the liability of multiple corporate entities entitled "Joint Employment" see 29 C.F.R. § 791.2 (2002). In any event, the Department of Labor's regulation clearly sets forth that both corporate entities found to be joint employers are jointly and severally liable under the FLSA, as follows:

> [i]f the facts establish that the employee is employed jointly by two or more employers, *i.e.*, that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purpose of the Act. In this event, all joint employers are responsible, both individually and jointly, for compliance with all of the applicable provisions of the Act, including overtime provisions . . . .

29 C.F.R. § 791.2(a) (2002).[2] In this case, the information set forth above, and by the fact that the same executives are officers of all of the corporate Defendants, requires the conclusion that all of the named Defendants are not "completely disassociated" with Lane's employment.

The broad definition of "joint employment" in the regulation emanates from the broad definition of "employee" in the FLSA. Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ."

---

[2] This regulation must be upheld unless it constitutes an impermissible interpretation of the statute. *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).

*Id.* § 203(d). To "employ" is defined as to "suffer or permit to work." *Id.* § 203(g). The Department of Labor's regulations state that when multiple corporate entities benefit from having an individual suffer or permit to work, both entities are liable, as follows:

> (b)  Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> * * *
>
> (2)  Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee;
>
> (3)  Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

29 C.F.R. § 791.2(b)(2-3). Under the facts alleged in the First Amended Complaint as set forth above, it cannot be said that XYZ was completely disassociated from the employment given that XYZ and CAMCO are owned by the same people. Finally, while the Defendants repeatedly state that Lane has not alleged that XYZ is the alter ego of CAMCO, that is not true. While perhaps the First Amended Complaint does not use the words alter ego, it does state that the two corporate Defendants are owned by the same individuals, which makes them alter egos of each other. For these reasons, the Defendants' Motion should be denied.

## CONCLUSION

For the foregoing reasons, Lane respectfully requests that the Court deny the Defendants' Motion to Dismiss.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been duly furnished by U.S. mail to: Andrew P. Speranzini, Esq., Foley & Lardner, LLP, Phillips Point, 901 West Tower, 777 South Flagler Drive, West Palm Beach, Florida 33401 and Michelle Stocker, Katz, Barron, *et al.*, 100 N.E. 3rd Avenue, Suite 280, Fort Lauderdale, Florida 33301, this ____ day of May, 2005.

Glasser, Boreth, Ceasar & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel. (954) 424-1933
Fax (954) 474-7405
E-mail: Glabor@aol.com

By_____
Chris Kleppin
Fla. Bar No. 625485

Harry O. Boreth
Fla. Bar No. 190903

C:MyDocuments/Lane/Plf'sResponsetoMtoDismiss05/12/05