UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60602-CIV-MARRA/SELTZER

RICHARD LANE and FAITH LANE,

       Plaintiff,

v.

CAPITAL ACQUISITIONS AND
MANAGEMENT COMPANY, a business entity,
XYZ VENTURE PARTNERS, L.L.C., a
Florida limited liability company, ERIC WOLDOFF,
an individual, GEORGE OTHON, an individual,
and REESE WAUGH, an individual,

       Defendants.

_____/

*NIGHT BOX FILED*

*APR 27 2006*

*CLARENCE MADDOX*
*CLERK, USDC/SDFL/FTL*

## SECOND AMENDED COMPLAINT

Plaintiffs, Richard Lane and Faith Lane ("the Lanes"), through their undersigned attorneys, file this Complaint against the Defendant, Capital Acquisitions and Management Company, a business entity, XYZ Venture Partners, L.L.C., a Florida limited liability company, Eric Woldoff, an individual, George Othon, an individual, and Reese Waugh, an individual (hereinafter referred to as "Defendant"), and allege:

### JURISDICTION AND VENUE

1.     This suit is brought against all Defendants pursuant to 29 U.S.C. § 201 *et seq.*, the Fair Labor Standards Act ("FLSA"), and a claim is also brought against Defendant CAMCO under 42 U.S.C. § 1981. No claims under § 1981 are brought against the other Defendants.

2.     Jurisdiction is conferred upon this Court by:

     (a)    29 U.S.C. § 216(b);

     (b)    28 U.S.C. § 1331; and

(c)      28 U.S.C. § 1343.

3.      Venue is proper for the United States District Court for the Southern District of Florida because:

(a)      The Lanes were employed in the Southern District of Florida by Defendant, which at all material times conducted, and continues to conduct, business in the Southern District of Florida; and

(b)      Additionally, venue lies pursuant to 28 U.S.C. § 1391(b) & (c), because the acts that give rise to the Lanes' claims occurred within the Southern District of Florida, and because the Defendant is subject to personal jurisdiction there.

## CONDITIONS PRECEDENT

4.      The Lanes have complied with all conditions precedent in this case, or they have been waived.

## PARTIES

5.      Both Richard and Faith Lane are citizens of the United States, who reside within the Southern District of Florida.

6.      Defendant Capital Acquisitions and Management Company is a business entity qualified to do business in the State of Florida which, at times material, conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the United States and of the State of Florida.

7.      Defendant XYZ Venture Partners, L.L.C. is a Florida limited liability company doing business in the State of Florida which, at all times material, conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the United

States and of the State of Florida.   XYZ Venture Partners, L.L.C. is the corporate parent of Defendant CAMCO.

8.      Defendant Eric Woldoff is in individual who conducted substantial and continuous business in the Southern District of Florida, and is subject to the laws of the United States and of the State of Florida.  Woldoff is an owner of both XYZ and CAMCO, and had knowledge that both of these entities were not properly paying collectors for overtime that they were due, but did nothing to rectify the situation.

9.      Defendants George Othon and Reese Waugh are individuals who conducted substantial and continuous business in the Southern District of Florida, and are subject to the laws of the United States and of the State of Florida.  Othon and Waugh are owners of both XYZ and CAMCO, and had knowledge that both of these entities were not properly paying collectors for overtime that they were due, but did nothing to rectify the situation.  Therefore, Othon and Waugh are nonresident defendants which were engaged in business activities in the State of Florida, and the Lanes' cause of action arises out of such activities.  Because of these ties to the State of Florida, Waugh and Othon had sufficient minimum business contacts with the State of Florida for the long-arm statute to apply in order to secure *in personam* jurisdiction over them.   The individual Defendants ran the day-to-day operations of the business, and knew that the Lanes (and other collectors) were not being paid the overtime that they were due, and knew that collectors were entitled to overtime, because the State of Illinois's Department of Labor investigated the Defendant for the failure to pay overtime to collectors, and required that the Defendant compensate those collectors for their back pay.

10.     Defendant is an "employer" pursuant to 29 U.S.C. § 203(d) of the Fair Labor Standards Act.

11.     Defendant is an "enterprise" pursuant to 29 U.S.C. § 203(r) of the Fair Labor Standards Act.

12.     Defendant is an enterprise "engaged in commerce" pursuant to 29 U.S.C. § 203(s) of the Fair Labor Standards Act, and the Lanes were individually engaged in interstate commerce.

13.     During all times relevant to this action, Defendant was an enterprise engaged in commerce as defined in 29 U.S.C. §§ 203(r) and 203(s).

14.     The Lanes were both an "employee" pursuant to 29 U.S.C. § 203(e)(1) of the Fair Labor Standards Act.

15.     The Lanes were both non-exempt employees of Defendant who was subject to the payroll practices and procedures described in Paragraphs 33, 34, and 35 below, and who worked in excess of forty (40) hours during one or more workweeks within three (3) years of the filing of this Complaint.

16.     At all times pertinent to this Complaint, Defendant failed to comply with 29 U.S.C. §§ 201-219 in that the Lanes performed services for Defendant for which no provision was made to properly pay for those hours in which overtime was required to be paid.

17.     At all times material to this action, Defendant CAMCO and certain of its representatives engaged in unlawful discriminatory, harassing, and retaliatory practices against the Lanes, which were motivated by the Lanes' race and complaints of racial discrimination, in violation of 42 U.S.C. § 1981.

18.     At all times pertinent to this Complaint, (a) Defendant CAMCO discriminated against the Lanes by transferring Faith as a Level 1 collector and assigning Richard as a Level 1 collector, when they should have been transferred and designated as Level 2 or 3, which paid approximately $500 (or more) more per month, (b) Defendant CAMCO discriminated against Lane

by not allowing the Lanes to work a partial shift and get paid for it, while allowing similarly situated whites to do so; (c) Defendant CAMCO discriminated against the Lanes because of the Lanes' race by terminating the Lanes, and (d) Defendant CAMCO retaliated against the Lanes for complaining about illegal discrimination.

## STATEMENT OF FACTS

19.     Richard and Faith Lane worked for the Defendant in its Rockford, Illinois office as collectors, and began working in that office in late 2002.

20.     The Lanes were both experienced collectors, with proven track records in the Defendant's Rockford, Illinois branch.

21.     In early 2004, Faith Lane wound up transferring to the Defendant's Fort Lauderdale, Florida office, at the request of the Defendant's officials in Rockford, Illinois.

22.     At the time of Faith Lane's transfer, the Defendant classified her as a Level 1 collector, and transferred her although the Defendant had a policy that Level 1 collectors were prohibited from transferring.

23.     At this same time, Richard Lane was required to resign and then was formally rehired when he came to Fort Lauderdale.

24.     Faith Lane began working in the Fort Lauderdale office on or about February 19, 2004, and Richard Lane began working on or about February 22, 2004.

25.      Soon after the Lanes began working in the Defendant's Fort Lauderdale facility, it became known to them that less experienced and less qualified non-blacks were being paid more money than them, and were being hired or elevated into higher positions, such as Level 2 and Level 3 collector positions.

26.     On or about March 5th or 6th, Faith Lane met with Brian Paxton and LeBrad Timmons, to complain about racial discrimination in pay, specifically about non-blacks without experience were being paid more for the same work and classified as Level 2 or 3 upon their hire.  Paxton denied that any pay or classification decisions had anything to do with racism or discrimination, and he told Faith that he is not hiring and has not recently hired any collectors at the Level 2 position.  Paxton ended the meeting, and told Faith Lane that her concerns were no big deal.

27.     In the first week of March, 2004, with the permission of Paxton, Richard Lane went back up to Rockford, Illinois, and then came back to begin work again in Fort Lauderdale, and when be came back the Defendant had terminated his file and gave him no accounts, which meant that he could not work, until the Defendant reactivated his file.   When non-black collectors would leave work for a couple days, the Defendant did not terminate their files, but rather left their files open so that they could continue working upon their return.

28.     The Defendant had a policy that if a collector came to work within four (4) hours of the end of their shift, they would get paid for the whole shift.  However, with respect to the Lanes, the Defendant did not apply this policy, but rather did not allow them to work if they could not begin their shift on time.

29.     The Lanes later discovered that the Defendant allowed a non-black collector named Ron, who was a rehire, sit in the office without any file (thus he was not working), but the Defendant paid him for his time.

30.     During the week of March 8-12, 2004, more collectors were hired by the Defendant's Fort Lauderdale facility, and Paxton assigned Faith Lane to train these individuals.

31.     On or about March 15, 2004, Faith Lane trained the new collectors for approximately one-half day, and the training carried over into March 16th.

32.     During the training of these new collectors, Faith Lane discovered that they were hired as Level 2 collectors, and thus paid more than her.  Furthermore, the Lanes learned that all of the collectors hired in the last 70 days (with the exception of two individuals) were hired as Level 2, even though some had no experience, and virtually none had prior experience working for the Defendant.  All collectors hired after Richard Lane was hired at Level 2 or higher.

33.     On or about March 19, 2004, the Lanes informed Sam Thompson, a manager, that they needed to speak with Paxton as soon as possible (as the Lanes desired to complain about race discrimination again), and the Lanes went into Paxton's office with Thompson, and Paxton summoned Timmons to be present.  As the meeting began, Faith Lane stated that Paxton had lied to her.  As soon as Faith Lane stated this, Paxton abruptly told them that they were terminated. Paxton had lied to her about the facts surrounding her prior complaint of race discrimination.

34.     The Lanes were denied bonus money that they were entitled to, because of their race.

35.     The Defendant and its representatives knew that the Lanes were working overtime, and that federal law requires employees to be compensated at time and one-half per hour for overtime pay.

36.     In the course of employment with Defendant, the Lanes worked the number of hours required of them, but were not paid time and one-half for all hours worked in excess of forty (40) during a workweek.

37.     The Lanes regularly worked in excess of forty (40) hours per workweek.

38.     The records, if any, concerning the number of hours actually worked by the Lanes, and the compensation actually paid to them, are in the possession and custody and control of Defendant, and the Lanes are unable to state at this time the exact amount due and owed to them, or to each similarly situated employee.  The Lanes propose to obtain such information by appropriate discovery proceedings to be taken in this case and to prove the amounts due at trial.

39.     The Lanes have retained the undersigned legal counsel to prosecute this action in their behalf, and have agreed to pay them a reasonable fee for their services.

40.     The Lanes are entitled to their reasonable attorneys' fees if they are the prevailing party in this action.

## COUNT I

## VIOLATION OF § 1981 – TERMS AND CONDITIONS OF EMPLOYMENT (CAMCO)

41.     The Lanes re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 40 as though fully set forth.

42.     Defendant CAMCO has intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, by treating Lane differently from similarly situated non-minority employees in the terms and conditions of her employment by, among other things, paying them less money then non-black collectors, classifying them less favorably than non-black collectors, disallowing them from working partial days, and denying them bonus money, because of Lane's race.

43.     The effect of the practices complained of above has been to deprive the Lanes of equal employment opportunities, and otherwise adversely affect their status as employees, because of their race.

44.     As a direct and proximate result of the intentional violations by Defendant CAMCO of the Lanes' rights under 42 U.S.C. § 1981, by treating the Lanes differently from similarly situated non-black employees, the Lanes have been damaged.  Their damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages.

## COUNT II

## VIOLATION OF SECTION 1981 – DISCRIMINATORY DISCHARGE (CAMCO)

45.     The Lanes re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 40 as though fully set forth.

46.     Defendant CAMCO has intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, by terminating the Lanes because of their race.

47.     The effect of the practices complained of above has been to deprive the Lanes of equal employment opportunities, and otherwise adversely affect their status as employees, because of their race.

48.     As a direct and proximate result of the intentional violations by Defendant CAMCO of the Lanes' rights under 42 U.S.C. § 1981, by discharging them because of their race, the Lanes have been damaged.  Their damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages.

<u>**COUNT III**</u>

<u>**VIOLATION OF SECTION 1981 – RETALIATION (CAMCO)**</u>

49.     The Lanes re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 37 as though fully set forth.

50.     Defendant CAMCO has intentionally engaged in unlawful employment practices and discrimination, in violation of 42 U.S.C. § 1981, by retaliating against them for having complained of racial discrimination, or an activity which the Lanes reasonably believed to be racial discrimination.

51.     The effect of the practices complained of above has been to deprive Lane of equal employment opportunities, and otherwise adversely affect their status as employees, because of such complaints.

52.     As a direct and proximate result of the intentional violations by Defendant CAMCO of the Lanes' rights under 42 U.S.C. § 1981, by retaliating against them for having complained of racial discrimination, the Lanes have been damaged.  Their damages include back pay, front pay, loss of benefits, future pecuniary loss, lost future earnings capacity, emotional pain, suffering, mental anguish, loss of enjoyment of life, other non-pecuniary losses, and punitive damages.

WHEREFORE, as to Counts I through IV, the Lanes respectfully request that this Court:

(a)     Order Defendant CAMCO to institute and carry out policies, practices, and programs which provide equal employment opportunities for its employees, and which eradicate the effects of its past and present unlawful employment practices.

(b)     Order Defendant CAMCO to make the Lanes whole by providing compensation for past pecuniary losses, including back pay with pre-judgment interest and lost benefits, in amounts to

be proven at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

(c)      Order Defendant CAMCO to make the Lanes whole by providing compensation for future pecuniary losses, including front pay, in amounts to be proven at trial.

(d)      Order Defendant CAMCO to make the Lanes whole by providing compensation for non-pecuniary losses, including emotional pain, suffering, mental anguish, loss of enjoyment of life, humiliation, and other non-pecuniary losses in amounts to be proven at trial.

(e)      Order Defendant CAMCO to pay the Lanes punitive damages for its malicious and/or reckless indifference to the federally protected rights of the Lanes, in amounts to be proven at trial.

(f)      Order Defendant CAMCO to compensate the Lanes for lost future earnings capacity, in amounts to be proven at trial.

(g)      Award the Lanes their attorneys' fees and costs in this action.

(h)      Grant such further relief as the Court deems proper.

## COUNT IV

## RECOVERY OF OVERTIME COMPENSATION

53.      The Lanes re-adopt, incorporate by reference, and re-allege Paragraphs 1 through 40 above as though fully set forth.

54.      The Lanes are entitled to be paid time and one-half for each hour worked in excess of forty (40) in each workweek.

55.      By reason of the intentional, willful, and unlawful acts of Defendant, the Lanes have suffered damages plus incurring costs and reasonable attorneys' fees.

56.    As a result of Defendant's willful violations of the Act, the Lanes are entitled to liquidated damages as provided in § 216 of the Fair Labor Standards Act.

WHEREFORE, for workweeks within three (3) years of the filing of this Complaint, the Lanes demand judgment against Defendant for the wages and overtime payments due them for the hours worked by them for which they have not been properly compensated (back pay), liquidated damages, reasonable attorneys' fees and costs of suit, and for all proper relief including pre-judgment interest, and any further relief that the Court deems necessary.

## DEMAND FOR TRIAL BY JURY

The Lanes demand trial by jury on all issues and all counts of this Complaint so triable as a matter of right.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been duly furnished by U.S. mail to:  Michelle Stocker, Greenberg, Traurig, 401 East Las Olas Blvd., Suite 2000, Fort Lauderdale, Florida 33301, this _27th_ day of April, 2006.

Glasser, Boreth, Ceasar & Kleppin
Attorneys for Plaintiff
8751 W. Broward Blvd.
Suite 105
Plantation, FL 33324
Tel.  (954) 424-1933
Fax  (954) 474-7405
E-mail:  Glabor@aol.com


By_____
     Chris Kleppin
     Fla. Bar No. 625485

     Harry O. Boreth
     Fla. Bar No. 190903

C:\MyDocuments/Lane/Plf'sComplaint-SecondAmended04/27/06